UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

JIM CANFIELD,

        Plaintiff,

        v.                                      Case No. 06-C-0373

CITY OF CEDARBURG, INC.,
CITY OF CEDARBURG PARK
AND FORESTRY BOARD,

        Defendants.

DECISION AND ORDER
GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DISMISSING CASE

Over fifty years ago, Harry and Marie Canfield purchased land in Cedarburg, Wisconsin. They divided the land into two parcels, built a home, and sold one of the parcels. In 1971, Harry Canfield divided the remaining parcel into four lots and was aware that one of the lots was unbuildable. Over the years the defendants have denied requests to either grant access to or to compensate Harry Canfield for the unbuildable lot. Frustrated, Harry Canfield gifted the property to his son, Jim, in 2003. Subsequently, Jim filed this lawsuit alleging an unconstitutional taking of the property in violation of 42 U.S.C. § 1983. Now, the case is before the court on defendants' motion for summary judgment.

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact by specific citation to the

record, at which time the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A "genuine issue" in the context of a motion for summary judgment is not a "metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). On a motion for summary judgment, the court construes all facts and draws all inferences from the record in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

When a party seeks summary judgment, the Local Rules for the Eastern District of Wisconsin require a specific response to the movant's proposed findings of fact, clearly delineating only those findings to which the adverse party asserts that a genuine issue of material fact exists. Civil L.R. 56.2(b)(1) (E.D. Wis.). A response to a proposed fact must refer to the contested finding by paragraph number and must include specific citations to evidentiary materials in the record which support the claim that a dispute exists. *Id.* In deciding a motion for summary judgment, the court must conclude that there is no genuine material issue as to any proposed finding of fact to which no response is set out. Civil L. R. 56.2(e) (E.D. Wis.).

The court conducted a hearing on Friday, August 3, 2007, and addressed the parties' failure to comply with the local rules. For example, defendants' proposed findings of fact rely entirely on the plaintiff's unverified complaint and the attached exhibits but defendants readily admit that it is impossible to determine the accuracy of the events in at least one of the exhibits because they are several decades old. PPF # 2 states that the

2

"plaintiff's claims concern a portion of property he has owned since 1954," and cites Complaint ¶ 9. One problem with this finding is that the plaintiff is Jim Canfield, and Jim did not acquire the property until December of 2003. Harry Canfield, who is not a named plaintiff, owned the property since 1954.

As pointed out to the parties, some of these inaccuracies could have been addressed in plaintiff's response to the proposed findings of fact, but plaintiff declined to file a response or its own proposed findings. Instead, plaintiff filed a motion in opposition to defendants' motion for summary judgment and attached exhibits. The responses to plaintiff's discovery requests, which are attached to the motion in opposition, fail to shed any light on what plaintiff perceives to be a genuine issue of material fact. Further, plaintiff filed an affidavit of counsel, but the affidavit simply contains legal arguments in opposition to defendants' motion.

Regardless, during the August 3, 2007, hearing, the court reviewed each of the proposed findings of fact with counsel. With minor revisions, the parties agreed that the findings were not in dispute. Moreover, the findings are deemed admitted given the plaintiff's failure to respond. Although plaintiff requested additional time to submit responses to the proposed findings and/or additional findings, plaintiff's counsel cited no facts that would alter the court's decision.

## FINDINGS OF FACT

The following findings are not in dispute. On March 29, 2006, plaintiff Jim Canfield filed a complaint against the City of Cedarburg, Inc., and the City of Cedarburg Park and Forestry Board. (Compl., ¶ 9) Plaintiff's claims involve property located on

3

Hamilton Road in Cedarburg, Wisconsin, near the Park Lane Hamilton Road intersection. (Compl., Ex. A, p. 6)

In 1953 the subject property was abandoned quarry land auctioned by the United States Government and purchased as a complete parcel by a group of Cedarburg businessmen. They sold the land to the City of Cedarburg. (Compl., Ex. A, p. 2) In 1954, the parcel was divided, and the Canfields purchased one portion and a real estate broker purchased the other. (*Id.*)

In 1957, the Canfields built a home on the property. (*Id.*) Then, in 1964, to sell their home, the land was divided by Harry Canfield into Parcels A and B. The Canfield home, located on Parcel B, was sold. (*Id.*) In 1971, Parcel A, was divided into four lots via a Certified Survey Map (CSM) submitted and signed by Harry and Marie Canfield. (Compl., Ex. A, p. 6) Harry Canfield and his developer submitted several lot configurations that were not accepted by the City of Cedarburg. (Compl., Ex. A, p. 2) However, the Canfields submitted the approved CSM. They signed the Owner's Certificate verifying as true the following statement:

> We, as owners, hereby certify that we caused the land described on this map to be surveyed, divided and mapped as represented on this map. We, also, certify that this map is required by Chapter 236.34 of the Wisconsin Statutes. Witness the hand and seal of said owners this 7th day of July 1971.

(*Id.*)

The executed and registered CSM consisted of three lots which were buildable and one 54' x 200' lot which did not have access and was not buildable. (Compl.,

4

Ex. A, p. 6) The Canfields paid property taxes on lot 4 as an unbuildable lot starting in 1971. (*Id.*)

In 1995, 1996, and 1998, Harry Canfield requested access to the unbuildable lot to build, but his request was denied. (Aff. Vance, Exs. 1-6) Then, in 2003, knowing there was no access and that it was an unbuildable lot, Harry Canfield gave the lot to his son, plaintiff Jim Canfield. (Compl., Ex. A, p. 3) Jim Canfield requested that the City provide access, swap the lot or buy the lot for approximately $95,000. (*Id.*)

CONCLUSIONS OF LAW

Defendants moved for summary judgment on the ground that the action is based on decision events occurring in 1971, which is well beyond the six-year statute of limitations. In addition, defendants argue that Wis. Stat. § 32.10 provides a procedure for an individual who alleges that his property is occupied by an entity possessing the power of condemnation. Finally, defendants argue that the claim is barred by laches as Canfield "slept on his rights."

While 42 U.S.C. § 1983 does not contain an express statute of limitations, a federal court must adopt the forum state's limitation period for personal injury claims and the correct statute of limitations for claims filed in Wisconsin is six years. Wis. Stat. § 893.53; *see Wudtke v. Davel*, 128 F.3d 1057, 1061 (7th Cir.1997). A claim begins accruing from the date the plaintiff knew or should have known that he sustained an injury, *Barry Aviation Inc. v. Land O'Lakes Municipal Airport Com.*, 377 F.3d 682, 688 (7th Cir. 2004), and "a later injury from the same tortious act does not restart the running of the statute." *Fojut v. Stafl*, 212 Wis.2d 827, 569 N.W.2d 737, 739 (1997) (quotations and citations omitted).

According to the exhibits attached to the complaint, Harry Canfield and a real estate broker submitted several proposals for subdividing the land in 1971. A Certified Survey Map (CSM) attached to the complaint dated January 4, 1971, reflects the approved division. The Owner's Certificate attached to the CSM is signed by Harry Canfield certifying that he caused the land to be "divided and mapped as represented." Hence, Canfield's own actions in subdividing the property landlocked the parcel at issue. Nothing in the record supports the plaintiff's argument that the defendants accomplished a taking.

Even assuming that defendants refused to approve any other proposals, the division was made in 1971. Harry Canfield knew and had reason to know that one of the lots was unbuildable since that time. Indeed, he paid taxes on the lot since 1971 as an unbuildable lot. When Harry Canfield asked the defendants to grant access or otherwise compensate him for the unbuildable lot in 1995, 1996, and 1998, his requests were denied.

It is axiomatic that Harry Canfield could not gift to his son a greater interest in the property than he already possessed. Therefore, to the extent that Harry Canfield's rights were extinguished by the statute of limitations, they would not be revived by gifting them to Jim Canfield.

In response, Jim Canfield relies heavily upon *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 105 S. Ct. 3108, 87 L. Ed. 2d 126 (1985), arguing that the statute of limitations did not begin to run until he made a request in 2005 that the defendants grant access, swap the property or buy it from him. However, in *Williamson*, the United States Supreme Court held that a takings claim does not accrue until available state remedies have been tried to no avail. *Id.* The Seventh Circuit has construed this exhaustion requirement strictly, warning that "[l]itigants who neglect or

disdain their state remedies are out of court, period," *River Park Inc., v. City of Highland Park*, 23 F.3d 164, 165 (7th Cir. 1994).

More recently the Seventh Circuit Court of Appeals held that a city did not accomplish a taking by listing an apartment complex on an "acquisition list" of properties that the city planned to acquire. *SGB Financial Services, Inc. v. Consolidated City of Indianapolis-Marion County*, *Indiana*, 235 F.3d 1036, 1037-1038 (7th Cir. 2000). The Seventh Circuit so ruled because the plaintiff failed to take advantage of Indiana's inverse condemnation proceedings before filing the federal suit. The court explained the rationale as follows:

> If the state offers a forum that will decide whether a taking has occurred and, if so, will fix just compensation-that is, if the state entertains inverse-condemnation suits-it is hard to see how the state could be thought in violation of the Constitution. And if the state is not violating the Constitution, there is no basis for relief under § 1983.

*Id.*

Here, plaintiff provided no evidence to refute the defendants' evidence that the statute of limitations had run. He offered no proof in the form of proposed findings of fact showing that in 2005 the defendants refused to swap, purchase or otherwise compensate him for the land at issue. Furthermore, the record includes no evidence that plaintiff sought redress through Wisconsin's inverse condemnation statute, § 32.10, or under the state constitution. Wis. Const. Art. I, § 13. Thus, plaintiff cannot avoid summary judgment.

Now, therefore,

IT IS ORDERED that defendants' motion for summary judgment is granted.

IT IS FURTHER ORDERED that this case is dismissed.

Dated at Milwaukee, Wisconsin, this 10th day of August, 2007.

                                          BY THE COURT

                                          s/ C. N. CLEVERT, JR.
                                          C. N. CLEVERT, JR.
                                          U. S. DISTRICT JUDGE

9